### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| PUREPECHA ENTERPRISES, INC., an Illinois Corporation, D/B/A EL MATADOR, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 22-cv-5569 |
| EL MATADOR FOODS INC., | ) ) | JURY DEMANDED |
| Defendant. | ) ) | |

## COMPLAINT

**NOW COMES** Plaintiff Purepecha Enterprises, Inc., an Illinois corporation, D/B/A "EL MATADOR" ("Plaintiff"), by and through its attorneys at Saper Law Offices, LLC, and hereby files this Complaint against Defendant El Matador Foods, Inc., a Texas corporation, ("Defendant"). In support thereof, Plaintiff states as follows:

## INTRODUCTION

This is an action brought by Plaintiff, against Defendant, for trademark infringement of its EL MATADOR family of trademarks under the Lanham Act (15. U.S.C. § 1114), unfair competition and passing off under the Lanham Act (15 U.S.C. § 1125(a)), violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510), Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505), and unfair competition under the common law. Defendant has adopted a series of trademarks and logos that use the exact same word mark as Plaintiff, EL MATADOR, alongside confusingly similar designs.

**THE PARTIES**

1.      Plaintiff Purepecha Enterprises, Inc. is an Illinois corporation, with its principal place of business located in Woodridge Illinois 60517.  Plaintiff manufactures and distributes its products throughout the United States

2.      On information and belief Defendant El Matador Foods, Inc., is a Texas corporation with its principal place of business located at 7201 Bayway Drive Baytown, Texas 77520.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue and personal jurisdiction are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and 15 U.S.C. § 1221 because, *inter alia*, a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant has promoted its goods and services online and offline in this district while using a mark confusingly similar to the Plaintiff's EL MATADOR family of marks.

**PLAINTIFF'S EL MATADOR TRADEMARKS**

5.      For over twenty years and originating from Álvaro Obregón, Michoacán, Mexico, Plaintiff has held a long tradition of creating natural and rich mixtures specially tailored for staple Latin cuisines.

6.      As early as 1999, Plaintiff began to develop its recipes for Latin seasonings, spices, and dry marinades, and began selling its products across the United States. Plaintiff sold these products under the "EL MATADOR" name, brand, and mark, and variations thereof (the "Plaintiff Marks").

7.      Plaintiff is the owner of the following valid and subsising United States trademarks on the principal register:

| MARK | REG. NO. | GOODS/SERVICES |
|------|----------|----------------|
|  | 3942992 | Class 030: Spices and Seasonings |
|  | 4488695 | Class 029: Pork rinds, uncooked, refrigerated sausage, refrigerated cheese and sour cream |
| **EL MATADOR ARRACHERA SEASONING** | 6024624 | Class 030: Spices; seasonings |
| **MATADOR BROTHERS** | 3436830 | Class 030: Marinades; Spices |

8.      Plaintiff's trademarks EL MATADOR & design (U.S. Reg. No. 3942992), EL MATADOR & design (U.S. Reg. No. 4488695), and MATADOR BROTHERS (U.S. Reg. No. 3436830) have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as Exhibit 1 are true and correct copies of these marks' registration certificates.

9.      Plaintiff has used the Plaintiff Marks in commerce throughout the United States continuously since their adoption in connection with the manufacture, distribution, sale, marketing, advertising, and promotion of staple Latin cuisines such as pork rinds, and staple Latin condiments in the form of and spices, seasonings, and meat rubs.

10.     Specifically, Plaintiff has extensively advertised and sold products in interstate commerce using the Plaintiff Marks continually, throughout at least the following territories from at least as early as the following respective dates:

> (a)      Illinois, 1999;
>
> (b)      Texas, 2000;
>
> (c)      Wisconsin 2000;
>
> (d)      Indiana 2000;
>
> (e)      Michigan, 2001;
>
> (f)      Missouri, 2003;
>
> (g)      Georgia, 2003; and
>
> (h)      Florida, 2006.

11.     Plaintiff's products are all branded with the Plaintiff Marks. Plaintiff uses the Plaintiff Marks extensively and advertises these marks on stationary, labels, trucks, clothes, the internet, print publications, and in trade show exhibit booths and displays. From time to time,

Plaintiff has also entered into distribution agreements with retailers to provide its products to larger consumer bases.

12.     As a result of its widespread, continuous, and exclusive use of the Plaintiff Marks to identify its goods and services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the Plaintiff Marks. The Plaintiff Marks are distinctive to both the consuming public and Plaintiff's trade.

13.     Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting its goods and services sold under the Plaintiff Marks. The Plaintiff Marks are exclusively associated with Plaintiff's proprietary high-quality products offered by Plaintiff.

14.     In addition to trademark use and registrations, Plaintiff has registered and used multiple domain names to promote its goods and services, namely, <matadorbros.com>, <purepechaninc.com>, and <elmatadorinc.com>.

**DEFENDANT'S INFRINGEMENT**

15.     On information and belief, Defendant is based in Baytown, Texas, and is in the business of selling tortillas, tortilla chips, flavored wraps, and recently salsas and spices under the "EL MATADOR" brand.

16.     Defendant promotes these products throughout its website https://www.elmatadorfoods.com/:



17.     Defendant sells a variety of tortillas, tortilla chips, and wraps, but does not sell

any salsas under the "EL MATADOR" brand on its website. Defendant provides one salsa menu

item that is provided under a non "ELMATADOR" brand name, "NUEVO LOREDO TEX-

MEX SALSA":

EL MATADOR FOODS INC.

7201 Bayway Drive, Baytown, TX 77520 | 800.470.CHIP | www.elmatadorfoods.com

| ITEM # | CORN PRODUCTS | PACK SIZE |
|---|---|---|
| EM 0801 | Restaurant Style Tortilla Chips - Fried | 10 lbs. |
| EM 0801-1 | Restaurant Style Tortilla Chips - Fried | 2/5 lbs. |
| EM 0802 | Pre-Cut White Corn Tortilla Chip - Raw | 25 lbs. |
| EM 0819 | Pre-Cut Tri-Color Corn Tortilla Chip - Raw | 25 lbs. |
| EM 0836 | Pre-Cut Yellow Corn Tortilla Chip - Raw | 25 lbs. |
| EM 0818 | Pre-Cut Tri-Color Tortilla Strips Bulk | 25 lbs. |
| EM 0803 | 6" Thin White Corn Special Tortilla - 4.5 oz. | 6/120 ct. |
| EM 0804 | 6" Thin Yellow Corn Special Tortilla - 4.5 oz. | 6/120 ct. |
| EM 0832 | Red Dye Corn Tortilla - 4.5 oz. | 6/120 ct. |
| EM 0834 | Blue Dye Corn Tortilla - 4.5 oz. | 6/120 ct. |
| EM 0833 | Green Dye Corn Tortilla - 4.5 oz. | 6/120 ct. |
| EM 0831 | Orange Dye Corn Tortilla - 4.5 oz. | 6/120 ct. |
| EM 0963 | Purple Dye Corn Tortilla - 4.5 oz. | 6/120 ct. |
| EM 0814 | 4" Mini White Corn Tortilla | 11/100 ct. |
| EM 0955 | 4" Mini Yellow Corn Tortilla | 11/100 ct. |
| EM 0812 | 6" White Corn Table Tortilla | 6/100 ct. |
| EM 0816 | 6" Yellow Corn Tortilla | 6/100 ct. |
| EM 0826 | White Corn Pre-Cut 4 Way - 3.5 oz. | 6/180 ct. |
| EM 0828 | Yellow Corn Pre-Cut 4 Way - 3.5 oz. | 6/180 ct. |
| EM 0805 | 6 X 9 Corn Flauta - Oval | 6/60 ct. |
| EM 0813 | 6 X 9 Flauta Maseca - Oval | 6/50 ct. |
| EM 0806 | Fried Taco Shell - 5.75" | 200 ct. |
| EM 0807 | Fried Tostada Sell - 5.75" | 200 ct. |
| EM 0809 | 7" Die-Cut Tortilla | 12/24 ct. |
| EM 0862 | 10" Die-Cut Tortilla | 12/24 ct. |
| EM 0811 | 12" Die-Cut Tortilla | 6/24 ct. |
| EM 0967 | 3" Nacho Tortilla | 6/300 ct. |
| EM 0987 | 5" Yellow Table Corn Tortilla - 8 oz. | 6/100 ct. |
| EM 0933 | 5.75 " Paprika Enchilada Tortilla - 7.5 oz. | 6/100 ct. |
| EM 0959 | 5.75" Yellow Table Corn Tortilla | 6/100 ct. |
| EM 0808 | 5.75" Table Corn Tortilla | 6/100 ct. |
| EM 0926 | 7" Yellow Nacho High-Lime Tortilla | 6/56 ct. |

| ITEM # | FLOUR PRODUCTS | PACK SIZE |
|---|---|---|
| EM 0003 | Frozen Dough Balls - 1.5 oz. | 20 lbs. |
| EM 4501 | 4.5" Mini Pressed Flour Tortilla | 8/50 ct. |
| EM 0602 | 6" Whole Wheat Flour Tortilla | 18/12 ct. |
| EM 0601 | 6" Pressed Flour Tortilla | 30/20 ct. |
| EM 0613 | 6" Mantecada Flour Tortilla | 20/12 ct. |
| EM 0975 | 6" Raw Flour Tortilla | 25/12 ct. |
| EM 0713 | 7" Mantecada Flour Tortilla | 20/12 ct. |
| EM 8010 | 8" Pressed Flour Tortilla | 20/12 ct. |
| EM 0800 | 8" Mantecada Flour Tortilla | 20/12 ct. |
| EM 1001 | 10" Pressed Flour Tortilla | 10/12 ct. |
| EM 1002 | 10 Whole Wheat Flour Tortilla | 10/12 ct. |
| EM 1201 | 12" Pressed Flour Tortilla | 10/12 ct. |
| EM 1202 | 12" Whole Wheat Flour Tortilla | 10/12 ct. |

| ITEM # | RETAIL PRODUCTS | PACK SIZE |
|---|---|---|
| EM 0330 | Nuevo Laredo Restaurant Style Chip | 12/8 oz. |
| EM 0111 | Nuevo Laredo Tex-Mex Salsa - Medium | 12/16 oz. |
| EM MASA | Fresh Corn Masa | 5 lbs. |
| EM 0843 | El Matador To-Go Chips (clear bag) | 38/3 oz. |
| EM 0882 | El Matador To-Go Chips (clear bag) | 16/6 oz. |
| EM 0852 | El Matador To-Go Chips (clear bag) | 12/8 oz. |

| ITEM # | 10"/ 12"/13" FLAVORED WRAPS | PACK SIZE |
|---|---|---|
| EM 8802 | Cinnamon/Apple Flour Tortilla | 10/12 ct. |
| EM 1203 | Spinach/Herb Wrap | 10/12 ct. |
| EM 1204 | Tomato/Basil Wrap | 10/12 ct. |
| EM 1209 | Cilantro Wrap | 10/12 ct. |
| EM 1205 | Chipotle Wrap | 10/12 ct. |
| EM 1208 | Garlic/Herb Wrap | 10/12 ct. |
| EM 1206 | Jalapeño Cheddar Wrap | 10/12 ct. |
| EM 1211 | Cayenne Pepper Wrap | 10/12 ct. |

18.     Sometime near December 2020, without Plaintiff's authorization, and beginning after Plaintiff acquired protectable exclusive rights in the Plaintiff Marks, Defendant adopted and has begun using "EL MATADOR," and logos confusingly similar to the Plaintiff Marks, in connection with, among other things, salsas, spices, marinades, and meat rubs (the "Defendant Marks"). *See* Exhibit 2.

---

[1] Defendant previously filed a trademark application for "NUEVO LAREDO TEX-MEX SALSA INGREDIENTS: TOMATOES, WATER, FRESH PEPPERS, GARLIC, ONIONS, SALT & SPICES MEDIUM" & design (U.S. Ser. No. 76533171). This trademark application never matured to registration. Further, at the time of filing July 28, 2003, Defendant filed this trademark application as an "intent to use" application.

19.     Sometime near December 2020, Defendant began a campaign to advertise, sell, and promote salsas, spices, marinades, and meat rubs using the infringing Defendant Marks. See Exhibit 3 for Defendant's advertisements and promotions on social media.

20.     Soon thereafter, Plaintiff began receiving multiple inquiries from customers concerning Plaintiff's Baytown Texas location and whether Plaintiff's products would be available for pick up at this location. Plaintiff does not have a location based in Baytown, Texas.

21.     Upon Plaintiff's further investigation, customers were wrongfully confusing Defendant and Defendant's products for the products of Plaintiff, and were otherwise being confused as to Defendant's affiliation to Plaintiff. Plaintiff is not and has never been affiliated with the Defendant or its products.

22.     In June of this year, Plaintiff contacted Defendant to attempt to resolve this matter in a reasonable and amicable manner by sending a letter demanding Defendant cease use of the infringing Defendant Marks in regard to salsas, spices, marinades, and meat rubs only. Plaintiff did not object to Defendant's sale of tortillas and tortilla chips.

23.     In response to Plaintiff's letter, Defendant asserted that Defendant had used the allegedly infringing Defendant Marks *for salsas and spices* before Plaintiff and that it had distributed its products to states outside of Texas.  Notably, however, Defendant could not provide any actual evidence of this longstanding prior use, asserting they could rely on the Defendant's owner's testimony to demonstrate prior use.

24.     Plaintiff then provided Defendant a final opportunity to meaningfully communicate and provide evidence of their priority claims.  Defendant then returned a single

photo of a worn box displaying one of the allegedly infringing marks with no other legible or discernable wording, and an unverified document purporting to memorialize an order of "Gephardt Type Chili Powder" and "ASTA Paprika," that Defendant had purchased from a third party. *See* Exhibit 4. Notably, Defendant did not provide any evidence that it was selling said items as stand-alone products or any other evidence that could reasonably support any date of "use in commerce."

25.     Defendant has since failed to meaningfully engage in further communication, and thus Plaintiff is forced to bring this action.

26.     To this day, despite receiving clear notice of Plaintiff's superior rights and actual confusion in the marketplace, Defendant continues to use the confusingly similar Defendant Marks in connection with, among other things, salsas, spices, marinades, and meat rubs. Defendant has not modified its packaging, removed infringing products from store shelves, provided notice to consumers, or otherwise taken any reasonable steps to avoid confusion.

27.     Defendant has intentionally adopted an identical and confusingly similar trademark to the Plaintiff Marks to sell their competing products. At the time Defendant entered the market and more specifically, began selling salsas, spices, marinades, and meat rubs, Defendant knew or should have known about Plaintiff's prior use of the Plaintiff Marks for directly competing products.

28.     Defendant's ongoing willful and intentional infringement of the Plaintiff Marks has caused, and continues to cause, irreparable harm to Plaintiff's business and reputation for which there is no adequate remedy at law.

29.     Plaintiff has invested substantial time, effort, and money promoting, marketing, advertising, and building up the Plaintiff Marks. As a result of the continuous and considerable effort and investment, the Plaintiff Marks have become, through public acceptance and recognition, an asset of substantial value symbolizing Plaintiff's quality of products and goodwill.

30.     Plaintiff has never authorized, licensed, or otherwise permitted Defendant to use the Plaintiff Marks or any confusingly similar marks.

31.     Without court intervention, the likelihood of confusion, and actual confusion, will only escalate, Plaintiff's brand and goodwill will only be further diminished, Plaintiff will continue to lose control of its reputation, and Plaintiff will suffer escalating damages.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C § 1114(a))

32.     Plaintiff realleges and incorporates by reference paragraphs 1-31 as though fully alleged herein.

33.     Defendant, without authorization, has used and is continuing to use Plaintiff's federally registered marks or spurious designations that are confusingly similar to Plaintiff's federally registered marks.

34.     Defendant's acts are intended to cause, have caused, and likely to continue to cause confusion, mistake, and deception among customers and the public as to whether Defendant's products originate from, or are affiliated with, sponsored by or endorsed by, Plaintiff.

35.     Defendant has acted with knowledge of Plaintiff's ownership of the federally registered marks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill associated with Plaintiff and its products.

36.     Defendant's acts constitute trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

37.     Upon information and belief, Defendant has made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

38.     Upon information and belief, Defendant intends to continue its infringing acts, unless restrained by this Court.

39.     Defendant's acts have damaged and will continue to damage Plaintiff and its federally registered trademarks. Plaintiff and its federally registered marks have suffered and continue to suffer irreparable harm and have no adequate remedy at law.

**COUNT II**
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

40.     Plaintiff realleges and incorporates by reference paragraphs 1-39 as though fully alleged herein.

41.     Defendant has passed off and continues to pass off its products as Plaintiff's products by knowingly and intentionally using a confusingly similar variation of Plaintiff's federally registered marks in connection with the sale of Defendant's products.

42.     The relevant public has believed, and is likely to increasingly believe in the future, that Defendant's products originate with, are licensed by, are sponsored by, are connected with, or are otherwise associated with Plaintiff.

43.     Defendant's unauthorized use of the infringing marks falsely represent Defendant as being legitimately connected with Plaintiff and places Plaintiff's reputation beyond Plaintiff's control.

44.     Defendant's willful and tortious conduct has proximately and in fact caused Plaintiff damages, including consumer confusion, sales diversion, lost goodwill, loss of advertising investment, and loss of control of Plaintiff's reputation.

45.     Defendant's unlawful and willful conduct will continue to irreparably damage Plaintiff unless enjoined by this Court.

## COUNT III
## VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510)

46.     Plaintiff realleges and incorporates by reference paragraphs 1-45 as though fully alleged herein.

47.     Through its use of a name and mark confusingly similar to the Plaintiff Marks for identical and substantially similar products, Defendant has passed off and continues to pass off its products as Plaintiff's products and has caused and continues to cause a likelihood of confusion and misunderstanding as to the source, sponsorship, approval, affiliation, connection, or association of its services. 815 ILCS § 510/2(a)(1)-(3), (12)

48.     Defendant's knowingly tortious conduct proximately, and in fact, caused Illinois consumers and Plaintiff damages through consumer confusion and harm to reputation, and Defendant will continue to do so unless enjoined by this Court.

## COUNT IV
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS § 515/1)

49.     Plaintiff realleges and incorporates by reference paragraphs 1-48 as though fully alleged herein.

50.     Plaintiff has valid and protectable rights in the Plaintiff Marks.

51.     The Plaintiff Marks are inherently distinctive or have otherwise acquired distinctiveness.

52.     Defendant's unauthorized use of the Plaintiff Marks have caused and continue to cause a likelihood of confusion and misunderstanding as to the source, sponsorship, approval, affiliation, connection, or association of its services, thereby constituting a violation of the Consumer Fraud and Deceptive Business Practices Act.

53.     As a direct and proximate result of the above-mentioned acts, practices, and conduct, Plaintiff has been and is likely to be substantially damaged in its business, including its reputation and goodwill, for which Plaintiff has no adequate remedy at law.

54.     Unless enjoined by this Court, Defendant will continue to engage in deceptive business practices to the Plaintiff's irreparable injury.

55.     The threat of future injury to the general public and to Plaintiff's business, identity, goodwill and reputation necessitates the award of injunctive relief to prevent the Defendant's continued wrongful and false acts.

## COUNT V
## VIOLATION OF ILLINOIS UNFAIR COMPETITION (ILLINOIS COMMON LAW)

56.     Plaintiff realleges and incorporates by reference paragraphs 1-55 as though fully alleged herein.

57.     Defendant's knowing and unauthorized use of the Plaintiff Marks in connection with its products have caused and will continue to cause consumer confusion as to the source of the products at issue, as well as the sponsorship and/or affiliation of Plaintiff to those products.

58.     As an actual and proximate result of Defendant's unfair competition, Plaintiff has suffered extensive damages, including diversion of sales, loss of goodwill and control of its reputation, and related damages.

59.     Defendant's unfair competition has been willful and intentional.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial of all issues that may be tried to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment:

A. Enjoining Defendant, its agents, representatives, employees, assigns, and all person acting in concert or privity with it, from:

   a. Using in any manner infringing trade dress, or any name, mark, or trade dress that incorporates the Plaintiff Marks or a confusingly similar mark to the Plaintiff Marks.

   b. Using or displaying the infringing marks, marks identical or substantially similar to the Plaintiff Marks, on any websites, products, or promotional materials in any false, misleading, and/or deceptive manner;

    c.   Acting in any manner likely to cause confusion or mistake in the minds of vendors, members of the public, or prospective consumers as to the source of the products or services offered for sale, distributed, or sold;

    d.   Acting in any manner likely to deceive members of the public, or prospective customers, into believing that there is some false connection, association, or affiliation between Plaintiff and Defendant;

    e.   Making any representations, express or implied, that Plaintiff is affiliated with, authorizes, endorses, sponsors, or approves of Defendant's products.

    f.   Continuing to use any of the Plaintiff Marks without the express approval of the Plaintiff.

B.  Order Defendants to recall all products currently in the market bearing infringing trademarks;

C.  Ordering Defendant to deliver for destruction, all products, labels, marketing and promotional materials, or any or other items in their possession, custody, or control of Defendants or its agents bearing infringing trademarks that are confusingly similar to the Plaintiff Marks;

D.  Ordering Defendant to file with this Court and serve upon Plaintiff within thirty (30) days after entry of an injunction, a written report under oath describing in detail the manner and form in which Defendant have complied with the injunction;

E.   Ordering Defendant to provide an accounting of profits made from its sale of products bearing infringing trademarks and ordering disgorgement of those profits under 15 U.S.C. § 1117;

F.   Enjoin Defendants from doing or performing the deceptive practices complained of;

G.   Awarding actual damages to be determined at hearing or trial;

H.   Awarding treble damages and pre-and post-judgment interest pursuant to 15 U.S.C. § 1117;

I.   Awarding reasonable attorney fees and costs under 15 U.S.C § 1117 and Illinois Law; and

J.   Granting Plaintiff all such further relief as the Court deems just and proper.

Respectfully submitted this October 11, 2022.


/s/ Daliah Saper
Daliah Saper (ARDC No. 6283932)
ds@saperlaw.com
Saper Law Offices, LLC
*Attorneys for Plaintiff*
505 N LaSalle, Suite 350
Chicago, IL 60646
312-527-4100

# EXHIBIT 1

# United States of America

## United States Patent and Trademark Office





**Reg. No. 3,942,992**

**Registered Apr. 12, 2011**

**Int. Cl.: 30**

**TRADEMARK**

**PRINCIPAL REGISTER**

PUREPECHA ENTERPRISES, INC. (ILLINOIS CORPORATION)
UNIT I
14032 S. KOSTNER
CRESTWOOD, IL 60445

FOR: SPICES AND SEASONINGS, IN CLASS 30 (U.S. CL. 46).

FIRST USE 6-0-1999; IN COMMERCE 1-0-2000.

THE MARK CONSISTS OF A BULL FIGHTER SILHOUETTE IN BLACK AND WHITE ARCHING BACKWARDS WHILE GRIPPING AN ELONGATED RED CAPE BEHIND HIM BENEATH THE WORDS "EL MATADOR".

THE COLOR(S) RED, BLACK AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE ENGLISH TRANSLATION OF THE WORD "MATADOR" IN THE MARK IS "BULL-FIGHTER".

SER. NO. 77-981,541, FILED 3-16-2009.

HOWARD SMIGA, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# United States of America
## United States Patent and Trademark Office

# EL MATADOR



**Reg. No. 4,488,695**

**Registered Feb. 25, 2014**

**Int. Cl.: 29**

**TRADEMARK**

**PRINCIPAL REGISTER**

PUREPECHA ENTERPRISES, INC. (ILLINOIS CORPORATION)
14032 S KOSTNER AVE
UNIT I
CRESTWOOD, IL 60445

FOR: PORK RINDS, UNCOOKED, REFRIGERATED SAUSAGE, REFRIGERATED CHEESE AND SOUR CREAM, IN CLASS 29 (U.S. CL. 46).

FIRST USE 1-15-2005; IN COMMERCE 1-15-2005.

THE MARK CONSISTS OF A BULL FIGHTER SILHOUETTE IN BLACK AND WHITE ARCHING BACKWARDS WHILE GRIPPING AN ELONGATED RED CAPE BEHIND HIM BENEATH THE WORDS "EL MATADOR".

THE COLOR(S) RED, BLACK AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE ENGLISH TRANSLATION OF THE WORD "MATADOR" IN THE MARK IS "BULL-FIGHTER".

SN 77-691,530, FILED 3-16-2009.

HOWARD SMIGA, EXAMINING ATTORNEY



*Michelle K. Lee*

Deputy Director of the United States
Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL
## TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.



# United States of America
## United States Patent and Trademark Office

## EL MATADOR ARRACHERA
## SEASONING

**Reg. No. 6,024,624**

Purepecha Enterprises, Inc. (ILLINOIS CORPORATION)
14032 S. Kostner Unit 1

**Registered Mar. 31, 2020** Crestwood, ILLINOIS 60445

**Int. Cl.: 30**

CLASS 30: Spices and seasonings

FIRST USE 1-29-2020; IN COMMERCE 1-29-2020

**Trademark**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

**Principal Register**

No claim is made to the exclusive right to use the following apart from the mark as shown:
"SEASONING"

The English Translation of the word "EL MATADOR ARRACHERA" in the mark is "THE
BULLFIGHTER SKIRT STEAK".

SER. NO. 87-730,770, FILED 12-21-2017



Director of the United States
Patent and Trademark Office



**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

Int. Cl.: 30

Prior U.S. Cl.: 46

**United States Patent and Trademark Office**

Reg. No. 3,436,830
Registered May 27, 2008

## TRADEMARK
## PRINCIPAL REGISTER

# MATADOR BROTHERS

PUREPECHA ENTERPRISES, INC. (ILLINOIS CORPORATION)
UNIT I
14032 S. KOSTNER
CHICAGO, IL 60445

FOR: MARINADES; SPICES, IN CLASS 30 (U.S. CL. 46).

FIRST USE 11-1-2007; IN COMMERCE 11-1-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-039,853, FILED 11-8-2006.

WARREN L. OLANDRIA, EXAMINING ATTORNEY

# EXHIBIT 2





# EXHIBIT 3



URL: https://www.facebook.com/El-Matador-Foods-141327055893110/

Date Accessed: 09/22/2022



URL: https://www.facebook.com/El-Matador-Foods-141327055893110/

Date Accessed: 09/22/2022

# EXHIBIT 4





Headquarters
111 Saint Elaine Road : P.O. Box 131
Rincon, New Mexico 87940
Phone: 575.267.4636 • Fax: 575.267.4633

August 26, 2022

To whom it may concern:

This is to verify that Rio Valley Chili, Inc. sold the following products to El Matador from 2004 to 2014.

2029 – Gephardt Type Chili Powder

3120 – 120 ASTA Paprika

Thank you,

Chelle Carson